*Formatted for Electronic Distribution*                                    *Not for Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

Filed & Entered
On Docket
September 5, 2018

_____

In re:

    **Patricia Ellen Wood,**                    **Chapter 13 Case**
        **Debtor.**                              **# 17-10381**

_____

**Patricia Ellen Wood,**
        **Plaintiff,**                          **Adversary Proceeding**
    **vs.**                                     **# 17-01016**
**Upper Valley Commercial Corp.,**
        **Defendant.**

_____

*Appearances:  Rebecca Rice, Esq.*       *John J. Kennelly, Esq.*
            *Cohen & Rice*            *Pratt Vreeland Kennelly Martin & White*
            *Rutland, Vermont*      *Rutland, Vermont*
            *For the Plaintiff*       *For Defendant Upper Valley Commercial Corp.*


## MEMORANDUM OF DECISION
### FINDING THE COURT LACKS CONSTITUTIONAL AUTHORITY TO ENTER A FINAL JUDGMENT

      Plaintiff Patricia Wood commenced this adversary proceeding to challenge Defendant Upper

Valley Commercial Corporation's right to enforce notes and mortgages, secured by Ms. Wood's Vermont

property, on the basis that it had violated the Vermont Lender Licensing Act ("VLLA"), thereby rendering

the notes void and unenforceable. Upper Valley Commercial Corporation ("Upper Valley") filed a motion

for summary judgment, asserting it is entitled to judgment as a matter of law because there are no material

facts in dispute, the Plaintiff lacks standing to pursue her claims, the Court does not have statutory

jurisdiction or constitutional authority to enter a final order in this proceeding, and the VLLA does not

apply to the notes in question.

For the reasons set forth below, the Court determines, first, there are no material facts in dispute as to this Court's statutory authority to adjudicate the claims at issue or the Court's constitutional authority to enter a final judgment in this proceeding and, second, that Upper Valley is entitled to judgment, as a matter of law, that this Court lacks constitutional authority to enter a final judgment in this proceeding.

### PROCEDURAL HISTORY

On December 18, 2017, the Debtor-Plaintiff filed a complaint to commence this adversary proceeding (doc. # 1, the "Complaint"). In the Complaint, the Plaintiff seeks (i) a declaration that the promissory notes secured by mortgages to the Defendant are void due to a violation of the VLLA, (ii) the avoidance and discharge of the Defendant's two mortgages, (iii) attorney's fees and costs, and (iv) other relief the Court determines is warranted.

On January 29, 2018, the Defendant filed an answer, denying its loans to the Plaintiff are subject to the VLLA, and asserting affirmative defenses based on this Court's lack of subject matter jurisdiction, Plaintiff's lack of standing, lack of case or controversy, estoppel, waiver, and Plaintiff's failure to state a claim upon which relief may be granted (doc. # 8, the "Answer").

On June 6, 2018, the Defendant filed a motion for summary judgment (doc. # 15, the "SJ Motion"), seeking a determination that the Court does not possess statutory jurisdiction under 28 U.S.C. § 157, or constitutional authority to enter final judgment, pursuant to Stern v. Marshall, 564 U.S. 462, 483–90 (2011), (doc. # 15, p. 6–12). On June 27, 2018, the Plaintiff filed an opposition to the Motion (doc. # 16, the "Opposition") asserting a determination of the validity of the Defendant's mortgages constitutes a core proceeding and, as such, may proceed in the bankruptcy court even without the Defendant's consent, citing GMAC Mortg., LLC v. Orcutt, 506 B.R. 52 (D. Vt. 2014)[1] (doc. # 16, p. 2). On July 10, 2018, the Defendant filed a reply to the Opposition (doc. # 17, the "Reply"), in which it challenged the Plaintiff's reliance upon Orcutt IV. The Defendant points out it did not file a proof of claim in this case and argues, "any statutory or constitutional authority that this Court may have had during the process of ruling on the creditor's proof of claim [in Orcutt III] is inapplicable [in the instant proceeding]" (doc. # 17, p. 1).

---

[1] The pertinent bankruptcy case referenced by the parties, In re Orcutt, consists of four separate opinions. For purposes of this memorandum of decision, the bankruptcy court decision granting the motion for summary judgment is referred to as Orcutt I. See Orcutt v. GMAC Mortg., LLC (In re Orcutt), 2012 Bankr. LEXIS 702 (Bankr. D. Vt. 2012). The district court decision vacating and remanding that order is referred to as Orcutt II. See GMAC Mortg., LLC v. Orcutt, 2012 U.S. Dist. LEXIS 177903 (D. Vt. 2012). The bankruptcy court's decision on remand is referred to as Orcutt III. See In re Orcutt, 2013 Bankr. LEXIS 1433 (Bankr. D. Vt. 2013). The district court's decision affirming in part, and reversing in part, is referred to as Orcutt IV. See GMAC Mortg., LLC v. Orcutt, 506 B.R. 52 (D. Vt. 2014).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Matican v. City of New York, 524 F.3d 151, 154 (2d Cir. 2008). "The moving party bears the burden of showing that no genuine issue of material fact exists." Vermont Teddy Bear Co. v. 1-800 BEARGRAM Co., 373 F.3d 241,244 (2d Cir. 2004). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009), citing Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The substantive law identifies those facts that are material; only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. Factual disputes that are irrelevant or unnecessary are not material. Id.

"A court faced with a motion for summary judgment both for lack of jurisdiction and on the merits must decide the jurisdictional question first, since a disposition on the merits is an exercise of jurisdiction." Whitney Holdings v. Givotovsky, 988 F. Supp. 732, 737 n. 27 (S.D.N.Y. 1997) (citing Moreno v. United States, 965 F. Supp. 521, 523–24 (S.D.N.Y. 1997)). Therefore, this Court will turn first to the Defendant's assertion that this Court lacks statutory and constitutional authority to adjudicate the issues raised in the Complaint.

## UNDISPUTED MATERIAL FACTS AS TO JURISDICTION AND CONSTITUTIONAL AUTHORITY

The Defendant filed a statement of undisputed facts with its Motion (doc. # 15-1, "SUMF"). The Plaintiff responded with a statement of disputed facts, in which she contested only four of Defendant's twenty-two statements of fact (doc. # 16-1, "SDF"). The Plaintiff did not provide her own version of those factual statements, but merely referred to each as "Disputed." The statements the Plaintiff disputes, while likely material for a determination of the Defendant's liability under the VLLA, are not material to the questions of jurisdiction and constitutional authority. For the purpose of determining whether this Court has jurisdiction to decide, and enter a final order on, the claims at issue in this adversary proceeding, the Court will rely on the following statements of material fact the Defendant alleges, and the Plaintiff admits:

1. Upper Valley Commercial Corporation is a New Hampshire corporation, which was in the business of taking deposits and making loans (SUMF ¶ 1, SDF ¶ 1).

3

2. In 2008 and 2009, Patricia Wood, and her spouse Gary Wood, secured two promissory notes with mortgages on their Vermont property (SUMF ¶ 4, SDF ¶ 4).

3. On or around December 10, 2008, Upper Valley loaned Patricia Wood and her spouse $25,000 in exchange for a mortgage on real property located at 3664 Roy Mountain Road in Barnet, Vermont (the "Property") (SUMF ¶ 5, SDF ¶ 5).

4. The 2008 mortgage was subsequently recorded in Book 127 at Page 251 in the Town of Barnet Land records (SUMF ¶ 6, SDF ¶ 6).

5. On or around April 21, 2009, Upper Valley loaned Patricia Wood and her spouse $375,000 in exchange for a mortgage on the Property (SUMF ¶ 7, SDF ¶ 7).

6. The 2009 mortgage was subsequently recorded in Book 127 at Page 321 of the Town of Barnet Land Records (SUMF ¶ 8, SDF ¶ 8).

7. On December 31, 2013, Upper Valley filed a Chapter 11 voluntary petition in the U.S. Bankruptcy Court for the District of New Hampshire, case no. 13-13110 JMD (SUMF ¶ 11, SDF ¶ 11).

8. That court confirmed Upper Valley's Reorganization Plan by order dated May 30, 2014 (SUMF ¶ 14, SDF ¶ 14).

9. The Reorganization Plan provided that Upper Valley would collect on its mortgage assets, including its mortgages on the Property that are the subject of this adversary proceeding (SUMF ¶ 15, SDF ¶ 15).

10. In 2015, Woodsville Guaranty Savings Bank commenced a foreclosure action against the Property; it named both Patricia and Gary Wood, as well as Upper Valley, as co-defendants (SUMF ¶ 16, SDF ¶ 16).

11. On or around June 8, 2015, Patricia Wood and her spouse brought a cross-claim against Upper Valley seeking a determination that the $375,000 loan was null, and a discharge of the mortgage securing that loan (SUMF ¶ 17, SDF ¶ 17).

12. On or about September 11, 2017, Patricia Wood filed a petition for relief under Chapter 13 of the Bankruptcy Code (SUMF ¶ 19, SDF ¶ 19).

13. On December 18, 2017, Patricia Wood commenced this adversary proceeding against Upper Valley, to void both mortgages (SUMF ¶ 20, SDF ¶ 20).

14. Upper Valley has not filed a proof of claim in this bankruptcy case (SUMF ¶ 21, SDF ¶ 21).

15. Upper Valley has not consented to this bankruptcy court's authority to enter a final determination in this adversary proceeding (SUMF ¶ 22, SDF ¶ 22).

## DISCUSSION

The Defendant argues this Court lacks both statutory jurisdiction under 28 U.S.C. § 157, and constitutional authority to enter a final judgment with respect to the validity of its liens, pursuant to Stern v. Marshall, 564 U.S. 462, 483–90 (2011). In support of that position, the Defendant contends the relief the Plaintiff seeks arises solely under state law, and the adjudication of that issue is not essential to this bankruptcy case.

4

As discussed below, the nature of the relief the Plaintiff seeks is crucial. The case upon which both parties rely, Orcutt IV, addressed avoidance of a lien under bankruptcy law, see GMAC Mortg., LLC v. Orcutt, 506 B.R. 52, 63 (D. Vt. 2014), whereas, here, the Plaintiff seeks to avoid the Defendant's liens pursuant to rights available under a Vermont statute.

1. THIS COURT HAS STATUTORY AUTHORITY TO DETERMINE LIEN VALIDITY UNDER 28 U.S.C. § 157.

The Defendant's first argument is that this adversary proceeding is not a core proceeding as defined under 28 U.S.C. § 157, thus leaving this Court without statutory jurisdiction to adjudicate the claims the Plaintiff alleges in the Complaint (doc. # 15, p. 8–9). The Defendant analogizes the claims in this proceeding to claims based on prepetition contract disputes, in cases in which the defendant did not file a proof of claim, and points out, in those cases, the courts determined the claims were not core matters (doc. # 15, p. 9) (citing In re East Hill Mfg. Corp., 200 B.R. 535 (D. Vt. 1996) and In re Orion Pictures Corp., 4 F.3d 1095 (2d Cir. 1993)).

The Defendant's characterization of the claims in this proceeding as analogous to those in East Hill and Orion is erroneous. The dispute in East Hill centered on a non-compete agreement between the chapter 11 debtor-in-possession and one of its former employees, and in Orion, the dispute involved an output contract with a disputed clause requiring continued employment of executives. Such claims do not fall into any of the categories in the non-exclusive list of "core proceedings" set out in the governing statute. See 28 U.S.C. § 157(b)(2).

By contrast, the dispute in the instant adversary proceeding fits squarely within one of the proceedings identified as core: it seeks a determination of the validity of the Defendant's liens. Subsection (K) specifies, "Core proceedings include … determination of the validity, extent, or priority of liens." See id. As bankruptcy courts in this Circuit have observed, "Section 157(b)(2)(K) has been construed to allow bankruptcy courts to make determinations as to the validity, extent and priority of liens on the *estate's* (or at a minimum, the *debtor's*) property." Hasset v. BancOhio Nat'l Bank (In re CIS Corp.), 172 B.R. 748, 759 (S.D.N.Y. 1994) (emphasis original); see also Gravel & Shea v. Vermont Nat'l Bank, 162 B.R. 961, 967 (D. Vt. 1993) (finding the bankruptcy court's determination of the validity of two creditors' liens was a core proceeding under § 157(b)(2)(K)).

Therefore, the Court finds it possesses statutory authority to determine the validity of the Defendant's mortgage liens, as a core proceeding, under the clear language of 28 U.S.C. § 157(b)(2)(K), and denies the Defendant's request for relief based on a lack of statutory authority. However, post-Stern, that is not the end of the inquiry; there are also principles of constitutional authority to consider.

2. <span style="font-variant: small-caps">This Court does not have Constitutional Authority to Enter a Final Judgment.</span>

The Supreme Court has held that there are some claims that are core proceedings under the governing statute but nonetheless cannot be adjudicated by an Article I court without the consent of all parties. See Stern v. Marshall, 564 U.S. 462, 483–90 (2011). Such a claim, often referred to as a "Stern claim" must be adjudicated by an Article III court. A bankruptcy court that lacks constitutional authority to enter a final judgment may hear the matter and submit proposed findings of fact and conclusions of law to the district court, to be reviewed de novo. See Executive Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165 (2014); Collier on Bankruptcy ¶ 7056.01. Then, the district court enters the final order or judgment, after considering the bankruptcy court's proposed findings and conclusions, and reviewing de novo any matters to which a party has filed a timely and specific objection. See Arkison, 134 S. Ct. at 2173; Davis v. CitiMortgage, Inc. (In re Davis), 2018 Bankr. LEXIS 205, **4–5 (Bankr. N.D. Ill. 2018).

In Orcutt IV, the District Court held a bankruptcy court does have statutory and constitutional authority to enter a final determination in a proceeding "when a particular state law issue necessarily would have been resolved in a bankruptcy proceeding." GMAC Mortg., LLC v. Orcutt, 506 B.R. 52, 63 (D. Vt. 2014) (emphasis original). Thus, this Court must determine whether it would be necessary to determine the validity of the Defendant's liens, under Vermont law, for the Plaintiff to proceed in her bankruptcy case.

The Defendant argues the Court lacks authority to enter a final judgment in this proceeding, under Article III of the United States Constitution, because the Defendant (i) has not consented to this Court's adjudication of the claims in this proceeding, and (ii) has not filed a proof of claim (doc. # 15, p. 8). The Plaintiff counters that the determination of the validity of the Defendant's liens is a core proceeding, "obviating the need for consent of the parties for this Court to issue a final order" (doc. # 16, p. 2).

In Orcutt IV, the District Court held that a determination of whether GMAC's mortgage, for which it filed a proof of claim, was a valid lien "would have been resolved in the claims process[,] … [and] was an integral part of … determining whether the Debtor's plan properly treated GMAC as unsecured." 506 B.R. at 63–64. That ruling affirmed this Court's decision in Orcutt III, that it had jurisdiction to adjudicate the validity of the secured creditor's mortgage because:

> it is the necessary first step in, and tantamount to, a ruling on: (1) the secured status of Defendant's claim in this case under § 506(a) of the Bankruptcy Code; (2) treatment of the Defendant's claim in the plan and objection to the plan under § 1325 of the Bankruptcy Code; and (3) the Defendant's objection to the Plaintiffs' claim of homestead exemption under § 522(b) of the Bankruptcy Code.

*In re Orcutt*, 2013 Bankr. LEXIS, * 13 (Bankr. D. Vt. 2013).

The salient facts of this case stand in sharp contrast to those of the *Orcutt IV* case, in three regards. First, the Defendant has not objected to the Plaintiff's plan[2] or objected to the Debtor's homestead exemption, or otherwise participated, in any way, in the Plaintiff's bankruptcy case.

Second, the Defendant has clearly and repeatedly indicated it does not consent to this Court's authority to determine the merits of this proceeding (doc. ## 15, 17). See *Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1949 (2015) (holding that Article III permits bankruptcy courts to decide *Stern* claims submitted to them by consent). Additionally, the Defendant has not filed a counterclaim in this adversary proceeding, which would effectively function as consent. See *DePaola v. Sleepy's LLC (In re Prof'l Facilities Mgmt.)*, 2015 Bankr. LEXIS 3643, * 18 (Bankr. M.D. Ala. 2015).

Third, and in stark contrast to the creditor in *Orcutt IV*, the Defendant has neither filed a proof of claim in the Plaintiff's bankruptcy case nor demonstrated any intent to subject its liens to the claims allowance process of the Bankruptcy Code. "A secured creditor is not required to file a proof of claim and its failure to do so will not result in the loss of its lien rights because, after the bankruptcy case is concluded, the secured creditor may pursue the collateral to satisfy its lien." *Kohout v. Nationstar Mortg., LLC (In re Kohout)*, 560 B.R. 399, 405 (Bankr. N.D.N.Y. 2016); see also *Green Tree Servicing, LLC v. Wilson (In re Wilson)*, 532 B.R. 486, 493 (S.D.N.Y. 2015); *In re Dumain*, 492 B.R. 140, 143 (Bankr. S.D.N.Y. 2013); *In re Henninger*, 53 B.R. 60, 62 (Bankr. W.D.N.Y. 1985). Since the Defendant does not seek to have its claim allowed in, or paid through, this bankruptcy case, there is no essential nexus between the validity of its liens and the claims allowance process of the Plaintiff's bankruptcy case.

Hence, the Court finds the Plaintiff's reliance upon *Orcutt IV* is misplaced.

The Court turns next to the nature and source of relief the Plaintiff seeks in her Complaint. Significantly, the Plaintiff is not seeking to avoid or reduce the Defendant's mortgage liens under bankruptcy law. Pointedly, the Plaintiff is not seeking a determination as to (i) the allowance or disallowance of the Defendant's claim under § 502,[3] (ii) the amount or secured status of the Defendant's claim in this case under § 506(a), or (iii) the avoidability of the Defendant's liens under § 506(d).

---

[2] The Debtor's plan, which does not provide for any payment to the Defendant, was confirmed on June 22, 2018 (doc. # 38).
[3] All statutory references in this memorandum of decision refer to Title 11 of the United States Code ("the Bankruptcy Code"), unless otherwise indicated.

Section 502(b)(1) of the Bankruptcy Code provides a party in interest may seek disallowance of a claim as "unenforceable … under any agreement or applicable law." However, that option is not available to the Plaintiff in this proceeding because the Defendant did not file a proof of claim. Without a proof of claim, the Plaintiff cannot object to, or substantively challenge, the notes and mortgages at issue in the Complaint, under § 502(b)(1).[4] See, e.g., Kohout v. Nationstar Mortg., LLC (In re Kohout), 560 B.R. 399, 405 (Bankr. N.D.N.Y. 2016) ("If, however, a secured creditor elects to file a proof of claim, the debtor may substantively challenge such claim under § 502."); In re Strathmore Group, LLC, 522 B.R. 447 (Bankr. E.D.N.Y. 2014) (finding that the claims under §§ 502, 506 fell into an exception under Stern by filing a proof of claim against the bankruptcy estate); In re King, 2010 Bankr. LEXIS 3830 (Bankr. N.D.N.Y. 2010) ("Once a proof of claim has been filed under 11 U.S.C. § 501, it 'is deemed allowed, unless a party in interest objects'") (quoting § 502(a)). Accordingly, since the Defendant did not file a claim in this case, the Plaintiff may not seek to determine the enforceability of the Defendant's liens under § 502(b)(1) of the Bankruptcy Code.

The filing of a proof of claim is similarly a necessary predicate for determining the secured status of the Defendant's liens on the Plaintiff's Property, under § 506(a), as that statute applies to an "allowed claim of a creditor secured by a lien." See COLLIER ON BANKRUPTCY ¶ 506.03(2)(a) (referring to the "requirement of § 506(a) that the relevant claim must be 'allowed[.]'") Since the Defendant "does not have an allowed claim[,] … a determination of secured status cannot be made under § 506(a)." Brisco v. United States (In re Brisco), 486 B.R. 422, 429 (Bankr. N.D. Ill. 2013). This was the issue in In re King where the bankruptcy court vacated its prior order under § 506(a) precisely because there was no proof of claim filed on behalf of the creditor at the time the order was entered. In re King, 165 B.R. 296, 300 (Bankr. M.D. Fla. 1994). See also In re Callahan, 251 B.R. 170, 172 (Bankr. S.D. Fla. 2000); In re Dembo, 126 B.R. 195, 199 (Bankr. E.D. Pa. 1991).

Finally, the Defendant's decision not to file a proof of claim also prevents the Plaintiff from avoiding the Defendant's liens under § 506(d). Only after a party objects to "a claim or interest, proof of which is filed[,]" see § 502(a), and "a secured claim is disallowed under § 502, [is] § 506(d) [] triggered."

---

[4] "If such objection to a claim [as described in § 502(a)] is made, the court, after notice and hearing … shall allow such claim in such amount, except to the extent that … such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." § 502(b)(1).

Kohout v. Nationstar Mortg., LLC (In re Kohout), 560 B.R. 399, 406 (Bankr. N.D.N.Y. 2016).[5]

In sum, the Court finds the claim the Plaintiff asserts against the Defendant, under the VLLA, is not the type of state law claim that must, necessarily, be resolved in this bankruptcy proceeding and, further, that the claim the Plaintiff asserts does not entitle her to any relief under the Bankruptcy Code, in the absence of a proof of claim.

## CONCLUSION

For the reasons set forth above, the Court concludes there are no material facts in dispute relevant to a determination of the Court's statutory jurisdiction or constitutional authority to decide the issues raised in this adversary proceeding. While the Court possesses statutory jurisdiction to adjudicate a lien avoidance under 28 U.S.C. § 157(b)(2)(K), as a core proceeding, it does not have constitutional authority to enter a final judgment on the merits of the Plaintiff's Complaint seeking relief under the VLLA, or the substantive prayer for relief in the Defendant's summary judgment motion, pursuant to Stern v. Marshall, 564 U.S. 462, 483–90 (2011).

This constitutes the Court's findings of fact and conclusions of law.

September 5, 2018
Burlington, Vermont

Colleen A. Brown
United States Bankruptcy Judge

---

[5] Moreover, § 506(d)(2) "expressly prevents a bankruptcy court from disallowing a claim and extinguishing a lien for a party's failure to timely file a claim." In re Osuji, 580 B.R. 36, 44 (Bankr. E.D.N.Y. 2018) (citing In re Shelton, 735 F.3d 747, 750 (8th Cir. 2013). Thus, Plaintiff would not be able to obtain an order declaring the Defendant's liens void under § 506(d)(2), based on the Defendant's failure to file a proof claim. Id.